No. 81-269

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

GEORGE ALLEN,

        Defendant and Appellant.

---

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead, The Honorable
Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

        Sherlock & Nardi, Kalispell, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
        Montana
        Ted O. Lympus, County Attorney, Kalispell,
        Montana

---

Submitted: March 16, 1982

Decided: MAY 14 1982

Filed: MAY 14 1982


*Thomas J. Kearney*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

On December 30, 1981, we remanded this appeal to the District Court for an evidentiary hearing on the terms of a plea bargain agreement and whether the prosecutor violated the agreement. State v. Allen (1981), ____Mont.____, ____P.2d____, 38 St.Rep. 2192. The evidentiary hearing has been held; the District Court has certified its findings of fact, conclusions of law, and order to this Court; supplemental briefs have been filed by the parties; and the appeal is now before us for final determination pursuant to our retention of jurisdiction.

Although the facts were set out at length in our previous opinion, supra, we recount them briefly here. On July 14, 1980, defendant was charged with sexual intercourse without consent involving a regular course of conduct with his daughter, age under 16, from 1977 through September, 1979. At the arraignment the next day, an amended information was filed charging defendant with sexual assault. Defendant pleaded guilty and was released to the Veterans Hospital in Sheridan, Wyoming.

On November 3, 1980, at the hearing in aggravation or mitigation of punishment, defendant was sentenced to 20 years imprisonment. On January 7, 1981, the District Court entered an order finding the prior sentence reasonable and left it unchanged. On January 12, defendant requested the District Court to set the sentence aside or to be allowed to withdraw his plea because the county attorney allegedly failed to fulfill his promises made to the defendant in a plea bargain agreement dated July 2, 1980, thereby denying defendant due process of law. The purported agreement was contained in a letter from defendant's counsel to the prosecuting attorney and provided in pertinent part:

> "It is my understanding that your office would
> be willing to accept a plea to one count of
> sexual intercourse without consent from my
> client and in return would recommend to the
> court that Mr. Allen receive a suspended sen-

- 2 -

tence for a period of ten to fifteen years and
that said suspension be conditional upon his
attending and completing a treatment program at
the Veterans Hospital in Sheridan, Wyoming, for
whatever time period they deem appropriate and
necessary. It is my understanding that your
office will not present testimony in aggravation
of sentence nor oppose a withdrawal of the
guilty plea should our agreement not be followed
by the court.

"If you have any additions or corrections please
don't hesitate to contact me at any time."
(Emphasis added.)

The prosecuting attorney acknowledged that he made no written
response to this letter. The District Court denied defendant's
motion to set the sentence aside or to withdraw the guilty plea.

Our first consideration of the case followed. We remanded
with instructions to the District Court to determine the terms of
the plea bargain agreement and whether the county attorney
breached them. Although appellant raises peripheral issues, the
central issue here revolves around the county attorney's failure
to recommend the suspended sentence of 10 to 15 years. The
District Court made the following finding of fact relating thereto:

"19. The County Attorney did not agree to
recommending a suspended Sentence. He did agree
to make no opposition to the request of the
Defendant for a suspended Sentence."

The District court made the following finding regarding the presen-
tation of the agreement to the court, which is uncontroverted by
defense counsel:

"14. At the January 7th hearing, the defense
counsel presented to the Court for the first
time the July letter of Mr. Nardi [defense
counsel]. The Court at that time disregarded the
letter for any and all purposes.

" . . .

"18. Until January 7, 1981, no mention was ever
made by either the defense counsel nor the
Defendant as to the recommended 15 year
suspended Sentence by the County Attorney, nor
any mention made as to a change of plea."

The following conclusions of law were entered with regard to the
plea bargain itself:

"1. The initial plea-bargain agreement between
defense counsel and the prosecutor was that the

Defendant would enter a plea of guilty to the offense of Sexual Intercourse without Consent, one count, a felony, and that in exchange for which plea the prosecutor would: not pursue the additional counts of the original charge; assent to and join in the Defendant's request that he be sent to the Fort Sheridan Veterans Administration Hospital prior to imposition of Sentence, and, following his successful completion of the Fort Sheridan Veterans Administration Hospital treatment program and appropriate discharge therefrom, not oppose the Defendant's proposition to the Court that he receive an extended suspended Sentence.

"2. The State did not agree to affirmatively recommending a suspended Sentence.

" . . .

"7. The prosecutor did not oppose any suspended Sentence at any time."

The issue now before us is whether the prosecuting attorney breached the terms of the plea bargain, denying defendant due process of law.

The transcript of the hearing on remand reveals two distinct versions of what the parties believed the agreement to be. Defendant's counsel stated they felt the letter embodied the terms of the agreement and so advised their client. The county attorney, on the other hand, repeatedly stated that he never agreed to recommend a suspended sentence but that he would not object to a suspended sentence. He felt that his version of the agreement was established by the numerous contacts between the parties subsequent to the quoted letter.

Defendant's counsel rely heavily on Santobello v. New York (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427. In that case the original prosecutor agreed to make no recommendation as to sentence in return for the defendant's pleading guilty to a lesser included offense. Seven months later, at the sentencing hearing, a different prosecutor recommended the maximum one-year sentence.

The Supreme Court reversed the sentence and remanded the case back to the state district court for further consideration, stating:

- 4 -

" . . . when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, supra, 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

Its clear that the Santobello holding was based in part on analoglies to contract law.

However, there appears to be a recent trend away from a strict contract characterization of a plea bargain agreement, at least before a contract is formed, and toward the reasonable expectations of the defendant's counsel. In Cooper v. U.S. (4th Cir. 1979), 594 F.2d 12, a plea bargain arrangement was offered by the prosecutor and accepted by the defendant. The defense counsel then made numerous unsuccessful attempts to contact the prosecutor by telephone to acknowledge acceptance and when contact was finally made, he was informed the offer had been withdrawn, 594 F.2d at 15.

The court acknowledged that by strict contract law principles no contract had arisen but still concluded that relief must be given and enforced the plea proposal to the extent then possible. More importantly, the Court described the test to be applied and the sources of defendant's rights:

> "We hold instead that under appropriate circumstances--which we find here--a constitutional right to enforcement of plea proposals may arise before any technical 'contract' has been formed, and on the basis alone of expectations reasonably formed in reliance upon the honor of the government in making and abiding by its proposals. At what point this right arises short of the struck bargain or any tangible, objective acts of reliance we need not attempt to say here as a matter of general rule.
>
> " . . .
>
> "We begin by noting that two distinct sources of constitutional right are involved here: most obviously and directly, the right to fundamental fairness embraced within substantive due process guarantees; less directly perhaps, but nonetheless importantly, the Sixth Amendment right to effective assistance of counsel." 594 F.2d at 18. (Emphasis added.)

Several other courts have adopted the Cooper rationale. See

Enforcing Plea Bargains: A Step Beyond Contract Law, 40 Maryland Law Rev. 90, 114 (1981).

Here the District Court accepted the county attorney's version of the agreement and rejected defense counsels' argument. There is substantial evidence in the record to support this decision. The standard of review is whether findings of fact and conclusions of law are clearly erroneous:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Rule 52(a), M.R.Civ.P.

Neither Santobello nor Cooper require reversal in this case. Although defense counsel would have us believe that the July 2, 1980, letter embodied the agreement, there is ample evidence that there were subsequent negotiations between the parties to such an extent that the terms of the letter should not have been relied upon by defendant's attorneys. For example, the letter states that defendant would plead guilty to the charge of sexual intercourse without consent. However, this term of the agreement was changed to a plea of guilty to the charge of sexual assault. Thus the final plea entered did not rest "in any significant degree on a promise or agreement of the prosecutor" to recommend a suspended sentence. Santobello, supra.

Here the uncontroverted facts indicate that the defendant was originally sentenced on November 3, 1980. The county attorney did not recommend a suspended sentence at that time. The first time the quoted letter or alleged plea bargain for a suspended sentence was presented to the District Court was over two months later on January 7, 1981. If defendant and his counsel were induced to enter a guilty plea on July 15, 1980, by the alleged promise of the county attorney to recommend a suspended sentence, why did they wait until January 7, 1981, to inform the District Court of the quoted letter and alleged promise of the county attorney? Are these uncontested facts consistent with

expectations reasonably formed in reliance upon the alleged promise of the county attorney to recommend a suspended sentence under the Cooper rationale?  Not at all!

Accordingly, we hold that the defendant's substantive due process rights were not violated under the circumstances of this case.  The judgment of conviction and sentence are affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

- 7 -

Mr. Justice Daniel J. Shea dissenting:

The real evil lies in the fact that we remanded this case for an evidentiary hearing before a district judge who had already held that a plea bargain did not exist and was determined to be harsh as possible in sentencing. It was a foregone conclusion that in the evidentiary hearing he would accept the county attorney's version of what happened which would enable him to keep the sentence intact. This Court should have ordered an evidentiary hearing before a different district judge.

The only fair way to handle this case would be to order a different district judge to determine whether there was a plea bargain. The original district judge already determined in his own mind what should be done with the defendant.

_Daniel J. Shea_
Justice